1

2

3

4

5

6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

7

ARTHUR A. ALLEN,

8

                              Plaintiff,

        v.

9

UNITED STATES AIR FORCE,

10

                              Defendant.

11

NO:  2:15-CV-354-RMP

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

12      BEFORE THE COURT is Defendant's Motion to Dismiss, ECF No. 13.

13  The Court has reviewed the motion, the record, and is fully informed.

14                          BACKGROUND

15      Plaintiff brings this action against the United States Air Force alleging

16  violations of his rights under the Administrative Procedures Act ("APA") and the

17  United States Constitution, seeking declaratory and monetary relief.  ECF No. 17.

18  As Defendant's motion attacks the sufficiency of Plaintiff's claims, the Court

19  briefly summarizes the facts as stated in Plaintiff's First Amended Complaint, ECF

20  No. 17 ("FAC").

21

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 1

1    Plaintiff is a former officer in the United States Air Force ("USAF") and

2    alleges that prior to the events that gave rise to this litigation, he was consistently

3    "identified as a superior performer . . . ." *Id*. at 3.  On January 9, 2012, then

4    Captain Allen was informed that his urinalysis test randomly administered in the

5    preceding month reflected a positive result for the presence of drugs.  The result

6    indicated the presence of oxycodone/oxymorphone, despite Plaintiff's assertion

7    that he never knowingly ingested that substance.  *Id*. at 4-5.  Plaintiff's chain of

8    command was not satisfied with his denial and offered Plaintiff the choice of

9    proceeding with a court-martial prosecution or a Non-Judicial Punishment (NJP)

10   pursuant to Article 15 of the Uniformed Code of Military Justice.  *Id*.

11   On March 27, 2012, Plaintiff accepted NJP, which resulted in his forfeiting

12   one month's pay and receiving a formal reprimand.  *Id*. at 7.  His subsequent

13   appeal was denied.  *Id*.  Following the adverse finding of the Article 15, the USAF

14   convened a Board of Inquiry (BOI) to determine the propriety of terminating

15   Plaintiff's employment for knowingly using narcotics.  *Id*.  On June 19, 2012,

16   following an extensive hearing, the BOI panel found in Plaintiff's favor, and, in

17   Plaintiff's words, "found that Captain Allen did not wrongfully use oxycodone in

18   the November – December 2011 timeframe . . . ." *Id*.

19   However, other proceedings stemming from the NJP continued, and on June

20   22, 2012, Plaintiff's chain of command contacted the Air Force Central

21   Adjudication Facility to begin the process of revoking his security clearance.  *Id*. at

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 2

8.  Without knowing of that request, Plaintiff presented the BOI's determination to

Lieutenant General Mark Ramsay, the 18th Air Force Commander ("18 AF/CC")

with a request that he "set-aside" his previous Article 15.  Lieutenant General

Ramsay denied the request and stated in relevant part that:

> The fact that the BOI reached a different decision than I did does not invalidate the Article 15, UCMJ action.
> As I'm sure your counsel advised you, during the course of the investigation you have the opportunity to request an exculpatory polygraph at no charge from AFOSI, but you didn't take advantage of that opportunity either.

*See id*. at 8-9.  Plaintiff alleges that he was not given that opportunity but that he

had requested a polygraph examination from a civilian source, which he passed.

*Id*.

On July 16, 2012, Plaintiff's chain of command "began the process of

requesting the SECAF [Secretary of the Air Force] remove Captain Allen from the

Captain-to-Major promotion list."  *Id*. at 9.  Although Plaintiff asserts that he was

medically cleared by "flight doctors" to return to flight status, his chain of

command denied him that opportunity and continued administrative proceedings to

permanently bar him from flying.

On August 29, 2012, Captain Allen petitioned the Air Force Board for

Correction of Military Records (AFBCMR)

> to correct an 'error or injustice' contained in his military records, the above-referenced Article 15, by finding that Lieutenant General Ramsay's decision to uphold the Article 15 was unjust given the BOI's finding of innocence and the passed polygraph examination and, in turn, order the Article 15, and actions stemming from the same,

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 3

removed from his records.  The AFBCMR assigned docket number BC-2012-03981 to Captain Allen's petition.

ECF No. 17 at 10.  Plaintiff supported his petition by arguing that the Article 15 NJP conflicted with the BOI's findings and his polygraph examination,[1] and that the conflict between the two processes was "not without precedence."  Plaintiff relied on a prior AFBCMR decision (Number 94 – 02889) that expressed disapproval of a commander's refusal to set aside an Article 15 in the face of a favorable finding from a board that Plaintiff argues was similar to the BOI in his case.  *Id*. at 10-11.

On October 10, 2012, the Secretary of the Air Force denied the request to remove Plaintiff's name from the promotion list, thereby enabling him to timely be promoted to Major.  *Id*. at 12.  However, Plaintiff was informed that the SECAF's decision did not vitiate the other administrative proceedings that were then pending against him.  He was also told that Lieutenant Colonel Sherman, the Chief Judge Advocate at Fairchild Air Force Base, reacted to the denial by stating: "why should we stop?  This just means he'll get promoted."  *Id*.  Regardless, Plaintiff supplemented his AFBCMR petition with this determination and subsequently submitted copies of his successful polygraph examination and a memorandum

---

[1] Plaintiff refers to this as an "independent Air Force process," ECF No 17 at 10, but previously admitted that the polygraph was not done through the Air Force but through a private source that he selected.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 4

disputing the assertion that he was ever offered the opportunity to take a USAF-approved polygraph examination.  *Id.*

On January 10, 2013, Plaintiff was informed that the Air Force Adjudication Facility intended to revoke his security clearance due to the Article 15.  ECF No. 17 at 13.  Plaintiff subsequently hired legal counsel and incurred $20,237.54 in legal costs contesting these administrative proceedings.  *Id.* at 14.

On January 30, 2014, the AFBCMR acknowledged the inconsistent results, but found "insufficient relevant evidence has been presented to demonstrate the existence of error or injustice," and, accordingly, did not remove the Article 15 from his records.  *Id.* at 14.

On March 5, 2014, the Air Force Personnel Security Appeal Board ("PSAB") fully reinstated Plaintiff's security clearance and, according to Plaintiff, found that he did not knowingly ingest oxycodone.[2]  Following this decision, Plaintiff states that he "retained local counsel and then began to take steps to re-engage the BCMR with the PSAB's results; but, beforehand submitted two Freedom of Information Act (FOIA) requests directed at the FAFB Drug Demand Reduction (DDR) program and the on-base pharmacy that issued Major Allen's

---

[2] Although Plaintiff selectively quotes the findings of the PSAB, for purposes of ruling on Defendant's motions, the Court accepts Plaintiff's assertions regarding the PSAB's findings.

1  December 2011 Robaxin prescription [a muscle relaxant that he was prescribed]."[3]

2  ECF No. 17 at 16.  The USAF produced responsive documents that Plaintiff

3  alleges revealed that the lab was found not to have fully complied with drug testing

4  regulations during inspections that spanned the time when Plaintiff's test results

5  were positive: as urinalysis handlers were not wearing gloves; the JAG office that

6  prosecuted Plaintiff was the same office that inspected the drug lab; and the lab

7  that had issued Plaintiff a prescription for Robaxin had apparently been cited for

8  failing to properly account for prescription narcotics during the relevant timeframe.

9  *Id.*

10       Plaintiff alleges that the investigation report found that "[t]he 92 ARW did

11  not always effectively manage controlled drugs, as MDG pharmacy operations

12  required improvement over selected safeguarding and accountability

13  controls…specifically …comply with physical and system access (safeguard)

14  controls over pharmacy operations …correctly document controlled drug

15  inventories…provide proper accountability for selected drug transactions."  *Id.* at

16  17.

17

18

19  [3] Despite Plaintiff's assertion that he "began to take steps to re-engage the BCMR"

20  he has not alleged that he did, in fact, re-engage the BCMR, and Defendant has

21  provided evidence that he failed to do so.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 6

On July 28, 2014, armed with new information and the set of administrative findings in his favor, Plaintiff submitted a renewed request to set aside his Article 15 NJP.  *Id.*  The request was reviewed by a new 18th AFCC, Lieutenant General Everhart, and on September 9, 2014, the USAF set aside Plaintiff's Article 15 NJP. Plaintiff was reimbursed for the one month's pay and two years' worth of aviation incentive pay that he had not been paid while disqualified from aviation service. *Id*. at 19.  On September 12, 2014, Plaintiff requested reimbursement for the attorney's fees he incurred "contesting the Air Force's attempt to permanently revoke his Security Clearance and Major Allen's post-BCMR petition denial of his Article 15 set-aside request." ECF No. 17 at 19.  The USAF denied this request. *Id*.

From January 2012 to September 2014, Plaintiff received poor ratings on his Officer Personnel Report, and Plaintiff states that he was "forced" to submit a "Request for Requalification for Aviation Service" on June 10, 2014.  *Id*.  Plaintiff alleged that his chain of command purposefully delayed his request, causing him to subsequently file a complaint with the Inspector General.  As a result, Plaintiff argues that "[p]ractically speaking, having been given two poor OPRs and having complained to the IG, Major Allen's active-duty Air Force career was effectively over which, in turn, forced him to leave the active-duty Air Force and transition to the Air Force Reserves."  *Id*. at 20.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 7

As Plaintiff transferred to the Air Force Reserves, he sought out employment with civilian airlines. *Id*. at 20. During the application process, he answered truthfully when asked whether his flying status has ever been revoked at any time during his military career. *Id*. Plaintiff has not received any offers of employment from those airlines. *Id*.

Plaintiff now seeks various forms of relief in eight different legal claims and has chosen to categorize them as follows:

Counts One, Two, and Three –"Violation of the Administrative Procedures Act, Declaration of APA Violation, and [V]iolation of 10 U.S.C. §1552." ECF No. 17 at 22.

Counts Four & Five – "Declaration that Defendant Violated the U.S. Constitution & 5th Amendment Claim." *Id*. at 25.

Count Six – "Attorneys' Fees and Costs." *Id*. at 31.

Count Seven – "Declaration that Major Allen is Presently the Prevailing Party for Purpose of Relief Under the EAJA." *Id*.

Count Eight – "Declaration that Equitable Grounds Exist to Award Major Allen Attorneys' Fees." *Id*.

Plaintiff seeks various forms of relief from this suit, including:

(a) That this Court enter an Order declaring that the Air Force violated the APA.
(b) That this Court enter an Order declaring that the Air Force violated Major Allen's rights under the United States Constitution.
(c) That this Court enter an Order finding that the Air Force BCMR violated 10 U.S.C. §1552.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 8

(d)  That this Court set aside the AFBCMR's decision regarding Major Allen or, alternatively, remand the same to the AFBCMR for corrective action.

(e)  That this Court enter an Order declaring that Major Allen is presently the prevailing party pursuant to the Equal Access to Justice Act and is entitled to recovery of the attorney's fees Major Alan [sic] expended in responding to the Air Force's arbitrary and capricious misconduct and ultimately vindicating himself against that misconduct as shown by the Air Force's setting aside of the Article 15 upon being confronted with the Air Force's undisputed violations of *Brady v. Maryland*.

(f)  That this Court award to Major Allen his reasonable attorneys' fees and costs pursuant to the EAJA because the Air Force's acts and omissions vis-à-vis Major Allen are not (and were not) substantially justified under the law.

(g)  That this Court enter an Order finding that equitable grounds exist to award Major Allen his attorneys' fees; and,

(h)  Provide to Major Allen such other and further relief as the Court deems just or equitable.

ECF No. 17 at 35.

Defendant now seeks a dismissal of all of Plaintiff's claims as it asserts that the Court either lacks subject matter jurisdiction over the claims or because Plaintiff fails to state a claim upon which the Court may grant relief.  *See* ECF No. 13.  In response to Defendant's motion, Plaintiff filed a First Amended Complaint pursuant to FED. R. CIV. P. 15.  *See* ECF No. 17.  However, Defendant's reply brief indicates that the arguments raised in their motion to dismiss still apply to the First Amended Complaint ("FAC").  *See* ECF No. 20.  Therefore, the Court will analyze Defendant's arguments in relation to the FAC.

/ / /

/ / /

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 9

ANALYSIS

For the purpose of analyzing Defendant's motion, the Court notes that a number of Plaintiff's claims overlap and seek the same relief.  For example, a declaration that Defendant violated the Fifth Amendment is a declaration that it violated the U.S. Constitution.  *See* counts four and five, ECF No. 17 at 25. Similarly, the Court fails to see the difference between count one, which alleges a violation of the APA, and count two, which seeks a declaration of that violation. Albeit inconsistently, Plaintiff separates allegations of wrongdoing from the relief he seeks as if those are separate legal claims (*see e.g.*, counts one, two, and three); and separates claims seeking the same relief, but that he believes are supported by different legal bases (*see e.g.*, counts six, seven, and eight).  However, for purposes of ruling on Defendant's motion, the Court will refer to the claims as Plaintiff has done in his FAC.

**Motion to Dismiss Claims VI-VIII for Lack of Subject Matter Jurisdiction**

"[S]overeign immunity shields the Federal Government and its agencies from suit."  *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citing *Loeffler v. Frank*, 486 U.S. 549, 554 (1988)).  The federal government cannot be sued unless it has "unequivocally expressed" a waiver or consent to be sued.  *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007).  A waiver must be strictly construed in favor of the sovereign and cannot be implied.  *Id*.  Subject matter jurisdiction depends on this prerequisite.  *Munns v. Kerry*, 782 F.3d 402, 412 (9th

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 10

1  Cir. 2015) (citing *Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1117 (9th Cir.

2  2003)).  "Once challenged, the party asserting subject matter jurisdiction has the

3  burden of proving its existence."  *Robinson v. United States*, 586 F.3d 683, 685

4  (9th Cir. 2009) (citing *Rattlesnake Coal. v. E.P.A.*, 509 F.3d 1095, 1102 n.2 (9th

5  Cir. 2007)).

6  　　　In counts six through eight, Plaintiff seeks attorney's fees and costs pursuant

7  to the Equal Access to Justice Act, 28 U.S.C. § 2412, declarations that he is

8  presently the prevailing party, and that equitable grounds exist to award him

9  attorney fees.  *See* ECF No. 17 at 31-34.  Plaintiff is seeking reimbursement of

10 attorney's fees that he incurred in his administrative proceedings within the Air

11 Force and is asking that he be deemed the prevailing party due to the Article 15

12 set-aside that has already occurred.  *Id.*  Although the FAC does not specify which

13 subsection of the statute is the basis for Plaintiff's claims, if he is relying on 28

14 U.S.C. § 2412(b), it states in relevant part:

15 　　　Unless expressly prohibited by statute, a court may award reasonable
     fees and expenses of attorneys . . . to the prevailing party in any civil
16   action brought by or against the United States or any agency or any
     official of the United States acting in his or her official capacity in any
17   court having jurisdiction of such action.

18 28 U.S.C. § 2412(b).  If Plaintiff is instead relying upon subsection (d), it states in

19 relevant part that:

20 　　　Except as otherwise specifically provided by statute, a court shall
     award to a prevailing party other than the United States fees and other
21   expenses . . . incurred by that party in any civil action (other than cases
     sounding in tort), including proceedings for judicial review of agency

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 11

action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C.A. § 2412(d)(1)(A).

The Ninth Circuit has stated that "because EAJA is a partial waiver of sovereign immunity it 'must be strictly construed in favor of the United States.'" *W. Watersheds Project v. U.S. Dep't of the Interior*, 677 F.3d 922, 927 (9th Cir. 2012) (quoting *Ardestani v. INS*, 502 U.S. 129, 137, (1991)).  The statute refers to the presence of a "civil action," and therefore, subsection (d)(1)(A) does not generally allow a Court to award fees that were incurred in administrative proceedings.  *See id*. at 926.  When requested in conjunction with a civil action, there are limited circumstances where such administrative fees may be awarded, however, "the Court has stated consistently that fees for administrative proceedings can only be awarded under § 2412(d)(1)(A) if the district court ordered the further proceedings, and the district court action remained pending until the conclusion of the administrative proceedings."  *Id*. at 927.

If Plaintiff is instead requesting fees under subsection (b), the requirement of a civil action is still explicitly listed in the statute.  Its plain terms contemplate awarding fees incurred in a "civil action" brought against the United States.  28

U.S.C. § 2412(b).  In *Blair v. United States*, 10 Cl. Ct. 614, 616 (1986), the court

stated that:

> [t]he United States Court of Appeals for the Federal Circuit [] has held
> that the Equal Access to Justice Act applies to civil actions in federal
> courts, and does not encompass administrative agency actions.  *Broad*
> *Avenue Laundry & Tailoring v. United States,* 693 F.2d 1387, 1390
> (Fed. Cir. 1982); *see also Morris Mechanical Enterprises, Inc. v.*
> *United States,* 728 F.2d 497, 498 (Fed. Cir. 1984).  Thus, prevailing in
> an administrative proceeding does not provide the essential foundation
> for the recovery of attorney fees and expenses under the Equal Access
> to Justice Act.

Therefore, Plaintiff's request that he be deemed to be the "prevailing party" and

accordingly awarded attorney's fees for purposes of the EAJA is misguided as he

has not "prevailed" in any civil action in federal court.

In response to Defendant's motion, Plaintiff argues that the Court has

jurisdiction over his claims for attorney' fees because he alleges "pre-litigation bad

faith conduct."  ECF No. 16 at 7.  Plaintiff cites a number of cases, mostly from

outside of the Ninth Circuit, to support his understanding of the EAJA to allow

recovery of attorneys' fees for pre-litigation bad faith conduct.  The Court need not

address the sufficiency of his allegations of bad faith because Plaintiff fails to

address the fact that his assertions of bad faith were untethered to any "civil

action."  His claims for attorney's fees are solely for the expenses he incurred in

disputing Defendant's actions that gave rise to this suit.  The Ninth Circuit Court of

Appeals in *Rodriguez v. United States*, 542 F.3d 704, 712 (9th Cir. 2008), stated

that:

> an award of attorney's fees is not appropriate when it is "based *solely* upon a finding of bad faith in the conduct underlying the lawsuit." *Ass'n of Flight Attendants v. Horizon Air Indus.*, 976 F.2d 541, 550 (9th Cir.1992) (emphasis added).   In *Association of Flight Attendants,* this court noted that no circuit court has shifted attorney fees based "*solely* upon a finding of bad faith as an element of the cause of action presented in the underlying suit," but recognized a possibility that "prelitigation conduct might be relevant to an award of fees for bad faith conduct during the litigation." *Id.* at 549–50.  We have previously approved of district courts considering the "totality of the circumstances," including conduct "*prelitigation* and during trial," when making bad faith determinations.

Consistent with this language, Plaintiff could allege bad faith in a petition for

attorneys' fees pursuant to the EAJA were he to prevail in this litigation.

However, at this stage of litigation, and in light of this Court's determination

regarding Plaintiff's other substantive claims, the Court does not have jurisdiction

to award him attorneys' fees pursuant to the EAJA.

    In count eight, Plaintiff seeks attorney's fees on equitable grounds and

"pursuant to the authority listed in *Fitzgerald*," as he refers to a district court case

from the District of Columbia, *Fitzgerald v. Hampton,* 545 F. Supp. 53, 57 (D.D.C.

1982).  ECF No. 17 at 32-34.  Plaintiff relies on quotations that refer to plaintiffs

who entered into civil actions to remedy bad faith conduct and prevailed in court,

only then seeking attorneys' fees.  Plaintiff does not provide a legal basis to award

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 14

1  him attorney's fees on equitable grounds when he has not prevailed in a civil

2  action.[4]

3      Plaintiff argues in a footnote that:

4      courts have properly awarded EAJA attorneys' fees when, as is the case
       here, a party brings an action alleging that a military administrative
5      agency's actions were "arbitrary and capricious" and obtains relief at
       the trial court level. *Gonzalez v. United States*, 44 Fed. Cl. 764, 768
6      (1999).  To that end, Plaintiff requests that the Court's ruling on
       Plaintiff's request for attorneys' fees be reserved until Plaintiff's APA/
7      § 1552 action resolves.

8  ECF No. 16 at 11.  As the Court makes clear in its analysis of those other claims,

9  there is no basis to reserve ruling on Plaintiff's claim for attorneys' fees.

10 Therefore, the Court will dismiss count six.  In light of that dismissal, Plaintiff's

11 claims seeking declarations of his status as a prevailing party and of his

12 entitlement to associated fees, counts seven and eight, are likewise dismissed.

13 **Motion to Dismiss Claims I-V for Failure to State a Claim**

14      The Federal Rules of Civil Procedure allow for the dismissal of a complaint

15 where the plaintiff fails to state a claim upon which relief can be granted.  FED. R.

16 CIV. P. 12(b)(6).  A motion to dismiss brought pursuant to this rule "tests the legal

17

18 _____
   [4] Plaintiff's quotations also refer to plaintiffs who had to turn to the court to obtain

19 the relief they sought.  As discussed in greater detail below, Plaintiff already

20 obtained the relief he sought, and there is no further relief this Court can afford

21 him.

1   sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In

2   reviewing the sufficiency of a complaint, a court accepts all well-pleaded

3   allegations as true and construes those allegations in the light most favorable to the

4   non-moving party.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir.

5   2010) (citing *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031-

6   32 (9th Cir. 2008)).

7        To withstand dismissal, a complaint must contain "enough facts to state a

8   claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

9   544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual

10  content that allows the court to draw the reasonable inference that the defendant is

11  liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

12       While specific legal theories need not be pleaded, the pleadings must put the

13  opposing party on notice of the claim.  *Fontana v. Haskin*, 262 F.3d 871, 877 (9th

14  Cir. 2001) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A plaintiff is not

15  required to establish a probability of success on the merits; however, he or she

16  must demonstrate "more than a sheer possibility that a defendant has acted

17  unlawfully."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "[A]

18  [p]laintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

19  requires more than labels and conclusions, and a formulaic recitation of the

20  elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

21

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 16

1    In counts one through five, Plaintiff seeks declarations that his rights were

2 violated pursuant to the Declaratory Relief Act, 28 U.S.C § 2201.  In counts one

3 through three, Plaintiff alleges violations of the Administrative Procedures Act, 5

4 U.S.C. § 706, and 10 U.S.C. § 1552.  Plaintiff asserts that Defendant violated the

5 APA in three ways: (1) "Major Allen's AFBCMR petition cited the AFBCMR case

6 of 94-02889, Case #2.  The 94-02889 AFBCMR decision was on point with Major

7 Allen's AFBCMR case but the BCMR failed to follow it and failed to articulate

8 why it did not follow it."  ECF No. 17 at 22;

9        (2) the AFBCMR's failure to grant Major Allen's Article 15 set aside
             request constituted the arbitrary elevating of one administrative
10           process (the Article 15 choice of forum in which no testimony was
             taken or cross examination allowed) over another administrative
11           process (the June 2012 BOI in which an impartial panel of three high
             ranking officers heard live under oath testimony from six witnesses
12           all of whom were subject to cross-examination).

13 *Id*. at 22-23.  (3) "the Air Force BCMR's failure to grant Major Allen's Article 15

14 set aside request constituted the arbitrary disregarding of the Secretary of the Air

15 Force's finding that grounds did not exist to remove then-Captain Allen from the

16 operative promotion list."  *Id*. at 23.[5]

17

18 ─────────────────
[5] In addition to alleging three ways in which the USAF violated the APA, Plaintiff

19 argues that the AFBCMR also erred in not addressing all of the claims that were in

20 his petition.  ECF No. 17 at 23.  However, Plaintiff does not cite any legal basis for

21 finding that the BCMR had to specifically address each request contained in his

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 17

Plaintiff does not fully articulate the basis for his claim based on 10 U.S.C. § 1552, which provides the Secretary of a military department with the authority to correct errors or injustices in a military record when necessary. *See* 10 U.S.C. § 1552. Plaintiff's FAC relies upon the same factual basis for the claims brought pursuant to the APA and 10 U.S.C. § 1552, as an attempt to argue that Defendant did not properly exercise the powers vested in it by 10 U.S.C. § 1552.

In counts four and five, Plaintiff asserts that Defendant violated the U.S Constitution, and, separately, that it violated the 5th Amendment of the U.S Constitution. *Id*. at 25. Plaintiff argues that "the government's intentional withholding of potentially exculpatory evidence in a criminal proceeding constitutes a violation of the Fifth Amendment of the U.S. Constitution's Due Process Clause [sic]." *Id*. (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). As recognized above, one claim is simply a more specific reference to what the other claim asserts in a broader sense.

Although the Court addresses the viability of each of these claims as currently pleaded, the Court first addresses the justiciability of counts one through five in a general sense. "The Declaratory Judgment Act, 28 U.S.C. § 2201, does not itself confer federal subject matter jurisdiction." *Fid. & Cas. Co. v. Reserve*

petition, and fails to allege whether or not all of those requests were later addressed in his favor.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 18

1  *Ins. Co.*, 596 F.2d 914, 916 (9th Cir. 1979) (citing *Skelly Oil v. Phillips Petroleum*,

2  339 U.S. 667 (1950)).  "It has always been, and now is, essential to the

3  maintenance of a declaratory relief action that there be an actual controversy in

4  existence." *Garcia v. Brownell*, 236 F.2d 356, 357 (9th Cir. 1956); *see also* U.S.

5  Const. art. III, § 2, cl. 1.  The Declaratory Judgment Act simply provides an

6  additional remedy where jurisdiction already exists.  *See* 28 U.S.C. § 2201.

7       In order for this Court to have jurisdiction over this Plaintiff's requests for

8  various declarations, Plaintiff must make sufficient allegations to provide that a

9  "case or controversy" exists to meet the requirements of Article III standing.

10  Although Defendant relies on FED. R. CIV. P. 12(b)(6) in moving to dismiss counts

11  one through five, which allows for the dismissal of a complaint where the plaintiff

12  fails to state a claim upon which relief can be granted, "standing . . . pertain[s] to

13  federal courts' subject matter jurisdiction," and is "properly raised in a Rule

14  12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d

15  1115, 1122 (9th Cir. 2010).

16       The Court considers standing under an Article III analysis to determine

17  "whether the plaintiff has 'alleged such a personal stake in the outcome of the

18  controversy' as to warrant his invocation of federal-court jurisdiction and to justify

19  exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S.

20  490, 501 (1975) (citing *Baker v. Carr*, 369 U.S. 186, 204 (1962)).  The Court

21  "must accept as true all material allegations of the complaint, and must construe

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 19

the complaint in favor of the complaining party." *Id.*  "[A]t the motion to dismiss

stage, Article III standing is adequately demonstrated through allegations of

'specific facts plausibly explaining' why the standing requirements are met."

*Machlan v. Procter & Gamble Co.*, 77 F. Supp. 3d 954, 959 (N.D. Cal. 2015)

(quoting *Barnum Timber Co. v. Envtl. Prot. Agency,* 633 F.3d 894, 899 (9th Cir.

2011).  As the Ninth Circuit Court of Appeals has explained in *Chandler*, 598 F.3d

1115, 1122 (9th Cir. 2010):

> "[T]he irreducible constitutional minimum of standing contains three
> elements," all of which the party invoking federal jurisdiction bears the
> burden of establishing.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555,
> 560-61 [] (1992).  First, the plaintiff must prove that he suffered an
> "injury in fact," i.e., an "invasion of a legally protected interest which
> is (a) concrete and particularized, and (b) actual or imminent, not
> conjectural or hypothetical." *Id.* at 560 [] (citations, internal quotation
> marks, and footnote omitted).  Second, the plaintiff must establish a
> causal connection by proving that her injury is fairly traceable to the
> challenged conduct of the defendant.  *Id.* at 560-61 [].  Third, the
> plaintiff must show that her injury will likely be redressed by a
> favorable decision. *Id.* at 561 [].

With those constitutional prerequisites in mind, the Court addresses counts one

through five as they relate to Defendant's arguments in favor of dismissal.

**Defense argument #1: Declaratory Relief is Not Available for Plaintiff's
AFBCMR claims (I-III)**

Defendant initially pointed out the fact that Plaintiff's initial Complaint only

asked for declaration in counts one through three and had failed to request that the

AFBCMR's decision be set aside, despite "[h]aving already obtained favorable

redress of matters that were before the AFBCMR . . . ."  ECF No. 13 at 13.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 20

1    Plaintiff seems to have misunderstood the heart of Defendant's argument, as he has

2    now added language to the FAC requesting a set aside or remand of the

3    AFBCMR's decision, in addition to requesting declaratory relief, *see* ECF No. 17

4    at 34, but does not explain how this Court can further remedy what has already

5    been accomplished by the Article 15 set aside.[6]

6         Plaintiff initially petitioned the AFBCMR seeking relief from the

7    punishment and proceedings that ensued from his Article 15.  ECF No. 1 and 17.

8    There is no dispute that the Article 15 was subsequently set aside, and Plaintiff's

9    rights and privileges within the USAF were restored.  The set aside came after

10   Plaintiff provided the USAF with documentation and support for a set aside that

11   was not previously presented to the AFBCMR.  As Plaintiff found greater success

12   through administrative proceedings, but prior to obtaining additional information

13   that he believed weighed in his favor through requests pursuant to the Freedom of

14   Information Act, Plaintiff "began taking steps to re-engage the BCMR . . . ."  ECF

15

16

---

17   [6] Plaintiff asserts that his Complaint "contemplates more than declaratory relief

18   regarding Counts One and Three."  ECF No. 16 at 4.  However, his example of

19   such further relief is a request that the Court "enter an Order finding that the Air

20   Force BCMR violated 10 U.S.C. § 1552."  ECF No. 1 at 32.  The Court finds that

21   this request is simply another way of asking for declaratory relief.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 21

1   No. 17 at 16.  However, at the time of this suit, Plaintiff has not yet "re-engage[d]"

2   the AFBCMR.  *See* ECF No. 15.

3          The AFBCMR regulations explicitly provide for reconsideration of a prior

4   decision if a petitioner provides new evidence that was not previously before the

5   Board.  As stated in the materials provided by the Air Force: "[t]he Board may

6   reconsider an application if the applicant submits newly discovered relevant

7   evidence that was not reasonably available when the application was previously

8   considered."  ECF No. 14-6 at 7-8.  Despite the fact that Plaintiff argues that his

9   Article 15 was set aside based on the submission of the information he obtained

10  through FOIA requests, he has not presented that "new evidence" to the AFBCMR

11  and has instead pursued this present litigation.  The Court agrees with Defendant's

12  argument that Plaintiff has not exhausted administrative remedies prior to filing

13  this suit and that Plaintiff seeks relief that this Court cannot provide given the

14  manner in which his claims are currently pleaded.

15         Plaintiff's FAC requests that the Court set aside the AFBCMR decision that

16  did not set aside his Article 15, despite the fact that the Article 15 was

17  subsequently set aside through different administrative channels.  Plaintiff asserts

18  that "[a]n order from this Court declaring 'that the Air Force's ... suspension of

19  Major Allen's flying status and discipline, which stemmed from the Article 15, is

20  null, void, and deemed to never have occurred' would serve a 'useful purpose.'"

21  ECF No. 16 at 6.  However, Plaintiff has not articulated any legal basis for this

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 22

1    Court to wipe the slate clean and state that all proceedings against him were

2    arbitrary because others found in his favor and he was later "vindicated."

3         Plaintiff fails to address the fact that the Air Force regulations provide that a

4    [s]et aside occurs when the punishment, or any part or amount thereof,
     whether executed or unexecuted, is removed from the record and any

5    rights, privileges, pay, or property affected by the relevant portion of
     the punisment are restored.  A set aside of all punishment voids the

6    entire nonjudicial punishment action.

7    ECF No. 14-1 at 30.  Therefore, the set aside that Plaintiff obtained already

8    accomplished what he seeks in this suit.  For the purpose of standing, Plaintiff fails

9    to adequately allege the existence of a "case or controversy" for which this Court

10   could redress the harm alleged.

11        In addition to the Court's finding that Plaintiff lacks standing on these

12   counts, Defendant also provides support for why declaratory relief is not suitable

13   for Plaintiff's claims.  Defendant relies upon *Guerra v. Sutton*, 783 F.2d 1371,

14   1376 (9th Cir. 1986) (quoting *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470

15   (9th Cir. 1984)) for two circumstances when declaratory relief is appropriate: "(1)

16   when the judgment will serve a useful purpose in clarifying and settling the legal

17   relations in issue, and (2) when it will terminate and afford relief from the

18   uncertainty, insecurity, and controversy giving rise to the proceeding."  ECF No.

19   13 at 13.  Defendant argues that no "legal relations" still exist between the parties

20   as the USAF "retained Plaintiff on active-duty, promoted him, restored his flight

21   status, and reinstated his security clearance."  *Id*.  Additionally, even if there were

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 23

1    such a relationship, Defendant fails to see any "useful purpose" that would be

2    served by clarifying declarations beyond lending support for Plaintiff's claims for

3    attorneys' fees. *Id.*

4            Plaintiff counters that the "legal relation" that needs clarifying is the

5    apparent disconnect between the AFBCMR decision in his case and a prior

6    determination in a different case where the "benefit of the doubt" was given to an

7    applicant. *See* ECF No. 16 at 5-6 and ECF No. 17 at 14.  First, this legal relation

8    has been resolved as Plaintiff received the "benefit of the doubt" when the USAF

9    set aside his Article 15.  Additionally, without this Court having any details of the

10   prior AFBCMR determination, and by the very nature of a "benefit of the doubt"

11   being case-specific, Plaintiff's FAC fails to provide any basis to question the

12   AFBCMR's determination that there was no "error or injustice" in the initial

13   Article 15, considering the evidence that was then before the Board.

14           Plaintiff also asserts that a useful purpose that would be furthered if the

15   Court grants his requests for declaratory relief would be "to assist Mr. Allen in

16   getting a job."  ECF No. 16 at 6.  Regarding the second prong of the two-part test

17   used in *Guerra*, the Court fails to see any present "uncertainty, insecurity, [or]

18   controversy" that remains unsettled.  The Court finds that Plaintiff's speculation

19   that this Court's sanctioning of the set aside by declaring the USAF proceedings to

20   have been arbitrary is insufficient to support his claims.

21

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 24

In light of the foregoing considerations, the Court dismisses Counts one through three.

**Defense Argument #2: Plaintiff's Constitutional Claims Fail (Counts IV-V)**

In counts four and five, Plaintiff relies upon *Brady v. Maryland*, 373 U.S. 83, 87 (1963), to support his argument that "the government's intentional withholding of potentially exculpatory evidence in a criminal proceeding constitutes a violation of the Fifth Amendment of the U.S. Constitution's Due Process Clause." ECF No. 17 at 25-26. Plaintiff asserts that the USAF committed *Brady* violations when they did not provide him with the information that he later obtained as a result of his FOIA requests,[7] and as a result, he did not "knowingly" waive his right to a court martial in favor of proceeding with an Article 15 NJP which unjustly found him responsible for taking narcotics. ECF Nos. 16 and 17.

Defendant refutes Plaintiff's claims regarding *Brady* violations by arguing that *Brady* does not apply to an Article 15 NJP and that even if it did, Plaintiff fails to sufficiently allege a proper *Brady* violation. Defendant argues four different bases for dismissing Plaintiff's constitutional claims: (1) The *Brady* rule does not apply; (2) Plaintiff fails to plead a valid *Brady* violation; (3) Plaintiff has no

---

[7] Plaintiff is referring to information regarding drug lab inspection reports and his belief that the JAG military prosecutor had a conflict of interest because that office was also responsible for overseeing the drug lab. *See* ECF No. 17 at 6.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 25

1    protected liberty or property interests; and (4) Plaintiff's claim is non-justiciable

2    for failure to exhaust military remedies.  *See* ECF No. 15-23.  The Court need only

3    address Defendant's first argument.

4         In the seminal case of *Brady v. Maryland*, the Supreme Court held that the

5    Government violates a criminal defendant's due process rights if it withholds

6    evidence favorable to the accused upon request.  373 U.S. at 87.  Plaintiff

7    seemingly concedes that the *Brady* rule only applies to criminal proceedings as he

8    does not provide any authority contradicting that proposition, but instead argues

9    that his Article 15 was criminal in nature and that his constitutional rights were

10   implicated because "the Air Force made it so."  ECF No. 16 at 13.

11        NJP provides military commanders with an ability to maintain "good order

12   and discipline" without having to severely punish those within their command and

13   tarnish their records with a court-martial conviction.  *See* ECF No 14-2 at 2.  With

14   the exception of privileges, the Military Rules of Evidence do not apply to NJP

15   proceedings.  *Id*. at 5.  The Government must follow procedures as outlined in the

16   documents provided by Defendant, *see e.g.*, ECF No. 14-2, including allowing

17   Plaintiff "to examine documents or physical objects against the member which the

18   non-judicial punishment authority has examined in connection with the case and on

19   which the non-judicial punishment authority intends to rely in deciding whether

20   and how much nonjudicial punishment to impose."  *Id*. at 4.

21

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 26

1    Consistent with the purpose of NJP, Defendant argues that Plaintiff

2    benefitted from avoiding a full court martial proceeding by receiving the less

3    severe NJP, and that he should not be able to demand the rights that he knowingly

4    and voluntarily waived to procure that benefit.  Plaintiff argues that he did not

5    "knowingly" waive court martial proceedings because he was not provided with

6    the information that he received through FOIA requests prior to choosing an

7    Article 15.  ECF No. 16 at 13.  However, Plaintiff has not provided any authority

8    to support his assertion that the Government must provide potentially exculpatory

9    information prior to his determining whether to proceed with NJP instead of a

10   court martial.  Plaintiff asserts that he should have been provided with information

11   regarding drug lab inspection reports and what he believes was a conflict of

12   interest between the base drug lab and the prosecutor's office.  *Id*. at 13-14.

13   Plaintiff's arguments fail to recognize the purpose of an Article 15 NJP, which

14   Defendant argues is a process that requires fewer procedural protections than a

15   criminal case, but limits the amount of punishment that may be imposed.

16    In a footnote, Plaintiff cites *Fairchild v. Lehman*, 814 F.2d 1555, 1559-60

17   (Fed. Cir. 1987), and seems to allege that he was provided with ineffective

18   assistance of counsel if any of the information he obtained through FOIA requests

19   regarding a conflict of interest was publicly available since counsel did not share

20   that with him.  *See id*.  The court in *Fairchild* stated that "[w]e do not think that an

21   accused can execute an intelligent waiver of his statutory right to trial when he has

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 27

been misinformed of the consequences of electing nonjudicial punishment by counsel provided by the military."  814 F.2d at 1560.  Plaintiff does not allege that he was misinformed of the consequences of his choosing an Article 15 NJP, but is instead arguing that his attorney should have provided him with information that would potentially be discovery in a criminal trial or a court martial.  *Fairchild* does not support his argument, and Plaintiff's brief averment to ineffective assistance of counsel is unavailing.

Plaintiff also quotes *United States v. Shelton*, 59 M.J. 727, 734, (A. Ct. Crim. App. 2004) *decision set aside*, 64 MJ 32 (C.A.A.F. 2006) for the proposition that "a military accused has a broader right of discovery than that required by the constitution under *Brady v. Maryland*."  ECF No. 16 at 14-15.  Plaintiff fails to recognize that *Shelton* involved a court martial, and, therefore, does not support his assertion that he was not provided adequate information prior to his Article 15 NJP.  Pursuant to the explicit terms of the USAF regulations, Plaintiff had the opportunity to seek a full court martial in favor of proceeding with the Article 15 NJP.  *See* ECF Nos. 14-1 at 17 and 14-2 at 3.  He fails to provide any basis to impose the requirements of a court martial onto his NJP proceedings.

Plaintiff instead attempts to argue that his Article 15 was sufficiently similar to a criminal case meaning his due process rights were implicated and *Brady* should apply.  The Ninth Circuit has repeatedly found that "Congress [] has explicitly stated Article 15 proceedings are noncriminal proceedings."  *Dumas v.*

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 28

*United States*, 620 F.2d 247, 252-53 (Ct. Cl. 1980); *see also United States v. Revelas*, 660 F.3d 1138 (9th Cir. 2011).  Despite such holdings, Plaintiff draws the Court's attention to the fact that in opposing his petition to the AFBCMR, the USAF referenced the Military Rules of Evidence and that he could have proceeded with a court martial instead of an NJP.  ECF No. 17 at 27.  Plaintiff argues that by doing so, the USAF somehow made the *Brady* rule apply to him as he states:

> since the Air Force inserted the Military Rules of Evidence and "beyond a reasonable doubt" standard into Captain Allen's case then it logically follows (as was acknowledged by the Air Force in its September 9, 2014, set-aside of the Article 15) that the *Brady v. Maryland*, 373 U.S. 83, 87 (1963) protections applied to the Air Force vis-à-vis Captain Allen.

*Id*.

Plaintiff's arguments are unavailing.  Plaintiff misses the point of the USAF's arguments as they only further demonstrate how he is now seeking protections that he waived when he opted for the Article 15 over a court martial, which would have had a higher standard of proof and additional procedural protections than those that were afforded Plaintiff in the Article 15.  Additionally, the Court is not persuaded that the set aside on September 9, 2014, somehow acknowledged a *Brady* violation simply because it overturned the prior punishment.

Plaintiff also cites *United States v. Revelas*, 660 F.3d 1138, 1143 (9th Cir. 2011) to provide various factors that the Court should consider when determining

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 29

1    whether or not his Article 15 was a criminal proceeding that should have invoked

2    the necessary due process considerations.  ECF No. 16 at 15.  He argues that

3    considering the nature of his charge, more factors weigh in favor of his NJP being

4    a criminal proceeding.  *Id*. at 16.  However, the court in *Revelas* provided an

5    analysis of whether Article 15 proceedings are criminal in general and did not give

6    a test to assess Article 15 proceedings on a case-by-case basis.  Furthermore, the

7    court explicitly stated that "even a showing that most of the relevant factors weigh

8    in favor of considering a punishment criminal in nature may be insufficient to

9    transform it into a criminal punishment."  *Reveles*, 660 F.3d at 1143.  In

10    recognizing the legislative intent to make NJP non-criminal, the Ninth Circuit held

11    that "when considered together, these factors fall short of the 'clearest proof'

12    necessary to 'override legislative intent and transform what has been denominated

13    a civil remedy into a criminal penalty.'"  *Id*. at 1145 (quoting *Riviera v. Pugh*, 194

14    F.3d 1064, 1068 (9th Cir. 1999)).

15        Based on the foregoing, the Court finds that Plaintiff fails to plead a viable

16    *Brady* violation because the rule did not apply to his Article 15 proceedings.

17    Although Defendant raises meritorious arguments regarding Plaintiff's failure to

18    seek administrative remedies and of the factually inadequate nature of Plaintiff's

19    claims, many of these arguments would be better suited to a motion for summary

20    judgment and should not be addressed at this stage of litigation.  Furthermore, the

21

Court need not address these arguments having found that Plaintiff failed to articulate a violation of the Fifth Amendment to the U.S. Constitution.

CONCLUSION

Having found that Plaintiff has failed to state a claim over which this Court can grant relief, the Court dismisses counts one through eight.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, **ECF No. 13**, is **GRANTED**. Plaintiff's First Amended Complaint, **ECF No. 17,** is **DISMISSED WITHOUT PREJUDICE**.

The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** this 28th day of July 2016.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS~ 31